1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

ERIC RICHARD ELESON,                        No.  2:19-cv-0076 AC P

12

Plaintiff,

13

v.                                          ORDER and

14

JOE A. LIZARRAGA, Warden, et al.,           FINDINGS AND RECOMMENDATIONS

15

Defendants.

16
17

I.      Introduction

18

Plaintiff Eric Richard Eleson is a state prisoner incarcerated in Mule Creek State Prison

19

(MCSP) under the authority of the California Department of Corrections and Rehabilitation

20

(CDCR).  Plaintiff proceeds pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983, and

21

an application to proceed in forma pauperis filed pursuant to 28 U.S.C. § 1915.  This action is

22

referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B)

23

and Local Rule 302(c).  For the reasons that follow, the undersigned grants plaintiff's request to

24

proceed in forma pauperis and recommends dismissal of the complaint without leave to amend.

25

II.     In Forma Pauperis Application

26

Plaintiff has submitted an affidavit and prison trust account statement that together make

27

the showing required by 28 U.S.C. § 1915(a).  See ECF Nos. 2, 5.  Accordingly, plaintiff's

28

request to proceed in forma pauperis will be granted.

1

1    Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action with

2    periodic deductions from his prison trust account.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this

3    order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28

4    U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the

5    initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.

6    Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the

7    preceding month's income credited to plaintiff's trust account.  These payments will be

8    forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's

9    account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

10    III.    Screening of Plaintiff's Complaint

11        A.    Legal Standards for Screening Prisoner Complaints

12    The court is required to screen complaints brought by prisoners seeking relief against a

13    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

14    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

15    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

16    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

17    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

18    Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.

19    1984).

20    "[A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to

21    relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

22    Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states

23    a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

24    draw on its judicial experience and common sense."  Iqbal at 679 (citation omitted).

25    "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however

26    inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

27    lawyers.'"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

28    106 (1976) (internal quotation marks omitted)).  See also Fed. R. Civ. P. 8(e) ("Pleadings shall be

2

so construed as to do justice.").  Additionally, a pro se litigant is entitled to notice of the

deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies

cannot be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

        B.     The Complaint

The allegations of the complaint, ECF No. 1, are considered together with plaintiff's

separately filed exhibits, ECF No. 7.  Purportedly on behalf of himself and other MCSP/CDCR

inmates, plaintiff challenges the denial of his request to purchase typewriter ribbons; the denial

was made on the ground that plaintiff does not possess a typewriter.

In May 2017, plaintiff requested replacement typewriter ribbons from an approved

Vendor Catalog as part of his Quarterly Package order.  When the package arrived, prison

officials refused to give plaintiff the ribbons on the ground that plaintiff did not possess a

typewriter.  Plaintiff pursued an inmate appeal on the matter, which was denied and exhausted at

the Third Level based on the following prison policies:  (1) "[t]he possession of accessories for

appliances . . . such as ribbons for typewriters . . . are automatically implied" only for inmates

possessing such appliances/ typewriters, as stated in the Authorized Personal Property Schedule

(APPS) set forth in Appendix A of the Department Operations Manual (DOM); (2) "institutions

may limit accessories based upon safety/security concerns," id.; and (3) "An inmate may not

exchange, borrow, loan, give away or convey personal property to or from other inmates," as

stated in the DOM at § 54030.1, and prison regulations, see 15 Cal. Code Regs. tit. 15, 3192.  See

ECF No. 7 at 16-7.

Plaintiff contends here that CDCR's refusal to authorize his purchase and receipt of

typewriter ribbons reflects a "non-existent/underground rule" that violates his rights to due

process and equal protection, and is fundamentally inconsistent with CDCR policy that permits

prisoners who do not possess an audio cassette or CD player to purchase audio cassettes and CDs.

The complaint also challenges the state court denials of a habeas petition that plaintiff

pursued on behalf of another inmate, a Mr. Miller.  Plaintiff alleges, inter alia, that the state court

"illegally denied" the petition "based upon the assumption that because Petitioner did not use his

own Administrative Appeal, the petition 'fails to state a prima facie case.'"  ECF No. 1 at 8.

Plaintiff seeks an order of this court directing defendants CDCR Secretary and the MCSP Warden to, inter alia, allow plaintiff specifically and MCSP/CDCR prisoners generally to purchase typewriter ribbons without possessing a typewriter and to reconcile the alleged inconsistencies of this challenged policy with the policy authorizing inmates to purchase audio cassettes and CDs without possessing an audio player.

C.      Defendants

The complaint challenges the official conduct of the CDCR Secretary and the MCSP Warden.  Both are sued in their official capacities for prospective injunctive relief, specifically, modification of the challenged prison policy at MCSP and/or throughout CDCR.  A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment if the official has authority to implement the requested relief, as both defendants would have in the instant case.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989).  "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."  Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991), and Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

Since the filing of plaintiff's complaint different officials have been appointed to these positions.  Kathleen Allison is now the CDCR Secretary, and Patrick Covello is now the MCSP Warden.  Therefore, under Rule 25, Federal Rules of Civil Procedure, K. Allison and P. Covello will be substituted as the defendants in this action in their official capacities.  See Fed. R. Civ. P. 25(d).

D.      Failure to State a Cognizable Claim

Plaintiff has no standing in this court to pursue challenges to state court decisions adverse to another inmate.  See U.S. Const. art. III, § 2.  "A 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 610 (9th Cir. 2005) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Nor may plaintiff pursue a class action on

4

1    behalf of other prisoners.  See McShane  v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (a

2    litigant appearing pro se has no authority to represent anyone other than himself).  Accordingly,

3    plaintiff cannot pursue the interests of Mr. Miller or any other prisoners in his challenge to prison

4    policies or decisions.

5            Plaintiff broadly contends that the challenged CDCR policy violates his Fourteenth

6    Amendment rights to equal protection and due process and is invalid under the standards set forth

7    in Turner v. Safely, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates'

8    constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

9    interests.").

10           The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated

11   persons be treated alike, without distinctions based on immutable characteristics.  City of

12   Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  Plaintiff's equal protection

13   claim challenges the distinctions drawn between prisoners who possess typewriters and those who

14   do not, and/or between prisoners who do not possess typewriters and prisoners who do not

15   possess audio cassette or CDC players.  Neither distinction implicates a "suspect" or "quasi-

16   suspect" classification supporting strict scrutiny or intermediate scrutiny analysis.  See Ball v.

17   Massanari, 254 F.3d 817, 823 (9th Cir. 2001).[1]  Nor do plaintiff's allegations support a "class of

18   one" equal protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (a

19   "class of one" equal protection claim is premised on allegations that the plaintiff "has been

20   intentionally treated differently from others similarly situated and that there is no rational basis

21   for the difference in treatment.").  Rather, "where individuals in the group affected by a law have

22   distinguishing characteristics relevant to interests the State has the authority to implement, the

23   courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how,

24   and to what extent those interests should be pursued.  In such cases, the Equal Protection Clause

25   _____

26   [1]  Challenges to state policies premised on a "suspect classification" (e.g. race, religion or
     national origin), or that burden the exercise of a fundamental constitutional right are analyzed
     under a "strict scrutiny" standard requiring that the challenged policy be narrowly tailoring to
27   serve a compelling governmental interest.  Ball, 254 F.3d at 823 (citation omitted).  Challenges
     premised on a "quasi-suspect classification" (e.g. gender or illegitimacy) are analyzed under an
28   "intermediate" scrutiny standard requiring that the challenged policy bear a substantial
     relationship to an important governmental interest.  Id. (citation omitted).

1   requires only a rational means to serve a legitimate end."  Cleburne, 473 U.S. at 441-42.

2         Similarly, under the Due Process Clause of the Fourteenth Amendment, "procedural

3   protections must be examined in terms of the substantive rights at stake. . . .  '[T]he substantive

4   issue involves a definition of the protected constitutional interest, as well as identification of the

5   conditions under which competing state interests might outweigh it.'"  Washington v. Harper, 494

6   U.S. 210, 220 (1990) (quoting Mills v. Rogers, 457 U.S. 291, 299 (1982) (citations omitted)).

7         Here plaintiff has not identified a constitutionally protected interest that gives him any

8   right to possess typewriter ribbons.  Courts examining similar claims have declined to find such a

9   right.  See Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985)

10  (declining to find a denial of plaintiff's First Amendment right to access the courts on the ground,

11  inter alia, that "[t]he existence or condition of the [prison] library's typewriters is irrelevant, as

12  the Constitution does not require that they be made available to inmates.") (citations omitted.);

13  accord, Foster v. Baker, 2020 WL 1694783, at *1, 2020 U.S. Dist. LEXIS 61232, at *2 (E.D. Cal.

14  Apr. 7, 2020) (Case No. 1:18-cv-01511 DAD SAB PC) (order adopting report and

15  recommendations finding that "there is no constitutional right to access a typewriter"); Johnson v.

16  Ibrahim, 2019 WL 4640514, at *1, 2019 U.S. Dist. LEXIS 163657, at *3 (E.D. Cal. Sep. 24,

17  2019) (Case No. 2:16-cv-387 JAM EFB P) (recommending denial of injunctive relief on the

18  ground that "there is no constitutional right to provision of a typewriter in prison") (citing

19  Lindquist, 776 F.2d at 858);[2] see also White v. Gibbons, 2009 WL 33416, at *2, 2008 U.S. Dist.

20  LEXIS 105671, at *4 (D. Nev. Dec. 5, 2008) (order denying reconsideration of order denying

21  injunctive relief on the ground that "[t]he United States Constitution does not mandate that

22  correctional facilities make typewriters available to inmates" (citing Lindquist, 776 F.2d at 858)).

23  The undersigned agrees with this line of cases, and finds that plaintiff's constitutional rights are

24  not implicated by denial of the opportunity to purchase typewriter ribbons.

25        Where, as here, "a state policy does not adversely affect a suspect class or impinge upon a

26  fundamental right, all that is constitutionally required of the state's program is that it be rationally

27

28  [2]  Report and recommendations adopted by Johnson v. Ibrahim, 2019 WL 6683198, 2019 U.S. Dist. LEXIS 210954, (E.D. Cal., Dec. 6, 2019).

1    related to a legitimate state objective."  Coakley v. Murphy, 884 F.2d 1218, 1221–22 (9th Cir.

2    1989).  The Turner factors do not apply unless plaintiff can plausibly allege the denial of a

3    constitutional right.  See Turner, 482 U.S. at 89-90.  Here, plaintiff cannot do so.

4         For these reasons, the court finds that the complaint states does not state a viable claim

5    and that amendment would be futile.  The court is persuaded that plaintiff is unable to allege any

6    facts, based upon the circumstances he challenges, that would state a cognizable claim.  "A

7    district court may deny leave to amend when amendment would be futile."  Hartmann v.

8    California Department of Corrections and Rehabilitation, 707 F.3d 1114, 1130 (9th Cir. 2013);

9    accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant

10   leave to amend if a complaint lacks merit entirely.").  Therefore, this court will recommend the

11   dismissal of this action without leave to amend.

12        IV.    Conclusion

13        Accordingly, IT IS HEREBY ORDERED that:

14        1.  Plaintiff's request to proceed in forma pauperis, ECF No. 2, is granted.

15        2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

16   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

17   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

18   Director of the California Department of Corrections and Rehabilitation filed concurrently

19   herewith.

20        3.  The Clerk of Court is directed to: (a) designate on the docket the substitution of the

21   following officials as the appropriate defendants in this action – Kathleen Allison as CDCR

22   Secretary, and Patrick Covello as MCSP Warden; and (b) randomly assign a district judge to this

23   action.

24        Further, for the reasons set forth above, IT IS HEREBY RECOMMENDED that this

25   action be dismissed without leave to amend for failure to state a cognizable claim.

26        These findings and recommendations are submitted to the United States District Judge

27   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21)

28   days after being served with these findings and recommendations, plaintiff may file written

objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 2, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE